**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Robert G. Ruud and Diane L. Rudd, on on behalf of themselves and others similarly situated, | Civil No. 14-1735 (DWF/LIB) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Anthony John Friendshuh; Cadro Kuhlmann; Heritage Partners, LLC; Legal-Ease, LLC; Dennis Lawrence; and PHL Variable Insurance Company, d/b/a Phoenix, | |
| Defendants. | |

Jeffrey D. Bores, Esq., and Karl L. Cambronne, Esq., Chestnut Cambronne, PA, counsel for Plaintiffs.

Mark E. Czuchry, Esq., Czuchry Law Firm, LLC, counsel for Defendants Anthony John Friendshuh and Heritage Partners, LLC.

Defendants Cadro Kuhlmann, Legal-Ease, LLC, and Dennis Lawrence, *pro se*.

Hutson B. Smelley, Esq., Rebecca A. Muff, Esq., Thomas F. A. Hetherington, Esq., and Henry M. Helgen, III, Esq., Edison, McDowell & Hetherington LLP, counsel for PHL Variable Insurance Company, d/b/a Phoenix.

**INTRODUCTION**

This matter is before the Court on Defendant PHL Variable Insurance Company's, d/b/a Phoenix ("PHL"), Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (Doc. No. 12) and Defendants Anthony John Friendshuh ("Friendshuh") and

Heritage Partners, LLC's ("Heritage") Motion to Dismiss Joining in Co-Defendant PHL Variable Insurance Company's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (Doc. No. 31).[1] The motions relate only to Counts I and II of Plaintiffs' Second Amended Complaint. (Doc. No. 1-2, Ex. A-13 (Second Am. Compl. ("SAC")) ¶¶ 53-59.) For the reasons set forth below, the Court grants the motions.

## BACKGROUND

### I.   Factual Background

Plaintiffs Robert G. Ruud ("R. Rudd") and Diane L. Rudd ("D. Ruud") (together, "Plaintiffs") are a retired married couple who live in Deerwood, Minnesota, and are senior citizens. (*Id.* ¶ 4.) Defendant Friendshuh is President and co-founder of Heritage, which is a business that focuses on selling insurance products, including annuities, and estate planning documents to senior citizens. (*Id.* ¶¶ 5-6, 11.) Defendant PHL, which does business as Phoenix, is a stock company. (*Id.* ¶ 8.)

Plaintiffs allege that on or about May 15, 2011, they saw an advertisement in the newspaper for a free dinner if they attended a seminar in Aitkin, Minnesota. (*Id.* ¶ 12.) Plaintiffs attended the seminar and dinner and, at that time, gave their contact information to Friendshuh. (*Id.*) After the seminar, Friendshuh contacted Plaintiffs and they met

---

[1]   Defendants Friendshuh and Heritage joined in PHL's motion to dismiss by filing a single page motion approximately one month after PHL filed its motion and supporting papers. (*See generally* Doc. Nos. 12, 13, 31.) Friendshuh and Heritage did not file a memorandum of law in support of their motion. (*See generally id.*)

2

three times over approximately nine hours. (*Id*.) Plaintiffs ultimately purchased a trust agreement and related documents for approximately $2,295.[2] (*Id.* ¶¶ 13-14.)

Plaintiffs further allege that over the course of the meetings between Plaintiffs and Friendshuh, they informed Friendshuh that they owned a Pacific Life annuity (the "Pacific Annuity") and Friendshuh urged them to exchange the Pacific Annuity for a PHL annuity for a number of financial benefits. (*Id.* ¶¶ 14, 16, 17.) Friendshuh allegedly told Plaintiffs that their current annuity was risky, had high fees, and had high volatility. (*Id*. ¶ 17.) Friendshuh allegedly further represented that the new annuity would have a significant value over the Pacific Annuity. (*Id*. ¶ 14.) Plaintiffs were required to pay a surrender charge when surrendering their Pacific Annuity, but Friendshuh allegedly reassured them that they would enjoy a "superior strategy," despite the charge, and that they would get a bonus of sorts. (*Id.* ¶ 16.) Plaintiffs agreed to the exchange. (*Id*. ¶ 17.) Plaintiffs allege that Friendshuh never informed them that he would receive a substantial commission by virtue of the exchange. (*Id.*)

In July 2011, Plaintiffs "surrendered" their Pacific Annuity and signed various documents executing the "surrender" and the transfer of funds to PHL. (*Id.* ¶ 15.) Then, in exchange for the Pacific Annuity, Plaintiffs ultimately purchased a PHL annuity that was a PHL Personal Income Annuity (the "PHL Annuity"). (*See id.* ¶¶ 14, 22; Doc.

---

[2] At this time, the Court does not include Plaintiffs' allegations relating to the trust agreement and related documents because the trust agreement and documents are not at issue for purposes of this motion.

3

No. 14 ("Smelley Decl.") ¶ 2, Ex. A ("PHL Annuity Policy")[3] at PHLRUUD000003, 000013.) The PHL Annuity included a fixed account and indexed accounts, and Plaintiffs elected to place the premium with the Monthly Point-to-Point Indexed Account – 1 Year S&P 500. (PHL Annuity Policy at PHLRUUD000000, 000013.) Defendant Cadro Kuhlmann was named on the PHL paperwork, but Plaintiffs never met him. (SAC ¶¶ 18-20.) Plaintiffs allege that Friendshuh met with them to explain the contract for the new PHL Annuity, including indicating that the real value of their new annuity was $240,688.99 despite the fact that the premium paid to PHL was $185,145.38. (*Id.* ¶ 22.) Plaintiffs further allege that as a result of the exchange, they suffered significant financial loss due to reduction in value and payment of fees. (*See id.* ¶¶ 25-26.)

## II.     Procedural Background

This case was filed as a putative class action on behalf of the following, approximately 500 person, proposed class:

> All senior citizens who purchased, through Defendants Anthony John Friendshuh and Heritage Partners, LLC, trusts or other estate documents allegedly prepare[d] by "Legal Ease" or Dennis Lawrence, attorney and who are Minnesota residents and all persons who, at the urging of Friendshuh, Heritage Partners or other Phoenix agents, including Cadro Kuhlmann, agreed to exchange an existing annuity for an annuity issued by PHL Variable Insurance Company, d/b/a Phoenix.

---

[3]     The Court properly considers the contract for the PHL Annuity purchase as a matter "incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab. Inc.*, 688 F.3d 928 932 n.3 (8th Cir. 2012) (citation and quotation omitted).

(SAC ¶¶ 41, 45.)

Plaintiffs first filed the action on January 9, 2014, in Minnesota state court in Hennepin County District Court, asserting claims against Friendshuh, Kuhlmann, Heritage, and Defendants Dennis Lawrence ("Lawrence") and Legal-Ease, LLC ("Legal-Ease").[4] (*See* Doc. No. 1-1, Compl.) The complaint was amended twice, including one time to join PHL as a Defendant. (*See* Doc. No. 1-2.) Defendants removed the case to federal court after PHL was added as a party. (Doc. Nos. 1 & 1-2.)

In their SAC, Plaintiffs assert the following claims: (1) fraud (against all Defendants) (Count I); (2) violations of the Minnesota Deceptive Trade Practices Act ("DTPA"), M.S.A. § 325D.44(5) & (8) and the Minnesota Consumer Fraud Act ("CFA"), Minn. Stat. § 325F.69 (against all Defendants[5]) (Count II); (3) unauthorized practice of law (against Friendshuh, Heritage, Lawrence and Legal-Ease) (Count III); and (4) consumer fraud (against Friendshuh, Heritage, Lawrence and Legal-Ease) (Count IV). (SAC ¶¶ 53-63.) Defendants PHL, Friendshuh, and Heritage move to dismiss Counts I and II as precluded by the Securities Litigation Uniform Standards Act ("SLUSA"). (*See* Doc. Nos. 12, 13, 31.)

---

[4] Defendants Lawrence, Legal-Ease, and Kuhlmann have defaulted in this matter. However, Lawrence and Legal-Ease appear to have filed *pro se* Answers, but failed to serve the relevant parties. Further, another action brought by the State is pending in Hennepin County District Court. *See State of Minn. v. Heritage Partners, LLC*, Civ. No. 27-14-1563. In the State-brought action, Friendshuh and Heritage, as well as Lawrence and Legal-Ease, have been enjoined from certain conduct relevant to this matter. (*See* Doc. No. 26, Ex. 3.)

[5] Plaintiffs state that the DTPA claim is not maintained against Defendant PHL, but that the CFA claim is against all Defendants, including PHL.

## DISCUSSION

I.  **Legal Standard**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

**II.     Securities Litigation Uniform Standards Act ("SLUSA")**

PHL, along with Friendshuh and Heritage, assert that Counts I and II must all be dismissed under SLUSA because all of the SLUSA elements have been met. (Doc. No. 13 at 8-9.)  Under SLUSA, certain state-law based class actions are expressly preempted.  Specifically, SLUSA states that "[n]o covered class action based upon statutory or common law of any State . . . may be maintained in any State or Federal court by any private party alleging . . . a misrepresentation or omission of material fact in connection with the purchase or sale of a covered security[.]"  15 U.S.C. § 78bb(f)(1).[6]  SLUSA includes a number of exceptions, which do not apply here.  *See* § 78bb(f)(5)(B).

The parties appear to agree that this is a "covered class action" under SLUSA.  *See* § 78bb(f)(5)(B)(i)(II) (defining a "covered class action").  The parties also appear to agree that the action is based on state statutory and common law.  However, the parties

---

[6]     As summarized by this Court in *Jaspers v. Prime Vest Fin. Servs., Inc.*, Civ. No. 10-853, 2010 WL 3463389, at *4 (D. Minn. Aug. 30, 2010):

> Congress enacted the Private Securities Litigation Reform Act ("PSLRA") in 1995 to target "perceived abuses of the class-action vehicle in litigation involving nationally traded securities." *Merrill Lynch, Pierce, Fenner & Smith v. Dabit,* 547 U.S. 71, 81 (2006).  After the PSLRA was enacted, litigants attempted to circumvent the PSLRA and its heightened burdens and pleading requirements by bringing class actions in state court pursuant to state law. *Id.* at 81–82.  "To stem this 'shif[t] from Federal to State courts' and 'prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of' the [PSLRA]," Congress enacted SLUSA. *Id.*

7

dispute whether the transaction involved a "covered security" and whether the transaction was "in connection with the purchase or sale of a covered security."

A "covered security" is defined by reference to Sections 18(b)(1) & (2) of the Securities Act of 1933 ("1933 Act"), which includes "[a security] listed, or authorized for listing, on a national securities exchange," § 77r(b)(1), or a security issued by an "investment company," § 77r(b)(2).  § 78bb(f)(5)(E).  The "in connection with" requirement has been examined extensively in case law, including in the recent Supreme Court decision in *Chadbourne & Parke LLP v. Troice*, 571 U.S. __, 134 S. Ct. 1058 (2014).

Plaintiffs argue that no "covered securities" are implicated by their claims. Plaintiffs assert that the focus of their claims is not the sale of the Pacific Annuity (a "covered security"), but is rather the *purchase of the PHL Annuity* (a non-"covered security").  As a result, according to Plaintiffs, the PHL Annuity and the whole transaction are not covered by SLUSA.  In support of their argument, Plaintiffs extensively brief the reasons that they contend that the PHL Annuity, an equity-indexed annuity and not a variable annuity, are not "covered securities."  However, the issue is not actually in dispute because the parties' memoranda show that they in fact agree that the PHL Annuity is not a covered security and that the Pacific Annuity is a covered security.  (Doc. No. 25 at 5-8; Doc. No. 35 at 7 ("The PHL indexed annuity products are not covered securities.  PHL never stated otherwise and in no way made its SLUSA argument dependent on such a proposition.").)

PHL, however, correctly counters in their reply memorandum, that the Court must refocus the dispute on whether the alleged fraud was "in connection with the *purchase or sale* of a covered security." According to PHL, the Court must find that when the alleged fraud "coincides" with a transaction involving "covered securities," claims about that fraud are barred under SLUSA.

The Court agrees that the focus of its analysis should be whether the alleged fraud was "in connection with the *purchase or sale* of a covered security," not on the question of whether the PHL Annuity is a "covered security" because the parties agree that it is not. In *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058 (2014), the Supreme Court addressed the breadth of the phrase "misrepresentation or omission of material fact in connection with the purchase or sale of a covered security." The Court concluded that "a fraudulent misrepresentation or omission" must be "material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security'" to be made "in connection with" such a "purchase or sale of a covered security." *Id.* at 1066. The Court concludes that Defendants meet this "in connection with" requirement.

Here, there is no dispute that Defendants misrepresentations and omissions were material to Plaintiffs' decision to transact in annuities—Plaintiffs specifically allege that they undertook the transaction at issue because of Defendants' representations regarding financial benefits. (*See* SAC ¶¶ 2, 14, 15, 16, 17, 41; *see also* Doc. No. 25.) There is also no question that Plaintiffs are alleging that the transaction at issue was in the form of an *exchange* of annuities—the exchange involved the "surrender" of one annuity and the acquisition of a new one in its place. An exchange, by its very nature cannot only

9

involve a single, unilateral purchase as Plaintiffs seem to try to argue—it involves two transactions. Thus, because *both* a "purchase" and "sale" were central to this exchange transaction, the Court must consider both sides of the exchange. As a result, even if Plaintiffs wish to focus their claim on their acquisition of the PHL Annuity, which no one disputes is not a "covered security," they cannot do so. Put simply, as alleged, the transaction here indisputably involved and required the surrender of variable annuities—covered securities—and was therefore "in connection with the purchase or sale of a covered security."

Plaintiffs' allegations further show that the "surrender" was integral to the transaction and was therefore "in connection with the purchase or sale of a covered security." In fact, Plaintiffs' allegations not only show that the sale was essential to the entire exchange transaction, but they go further by directly tying a number of key misrepresentations to the "surrender" alone. (*See id.* ¶¶ 14, 17.) For example, Plaintiffs allege that:

> Friendshuh urged [Plaintiffs] to exchange [the Pacific Annuity] . . . He explained that their [Pacific Annuity] . . . could be 'surrendered' and . . . [i]n urging the Ruuds to proceed with the annuity exchange [made misrepresentations to Plaintiffs . . . [.]] Such misrepresentations include . . . that their current [Pacific Annuity] was risky . . . [and] that their current [Pacific Annuity] entailed high fees and high volatility.

(*Id.*) Thus, the "surrender" was more than incidental to the transaction at issue—in fact, it was essential to the transaction. Here, the "in connection with" is met. *See, e.g.*, *Dabit*, 547 U.S. 85-89 (holding that SLUSA precluded a suit where the alleged fraud coincided with transactions involving covered-securities); *see also Jaspers*, 2010 WL 3463389, at

10

*4 (quoting *Kutten v. Bank of Am., N.A.*, 2007 U.S. Dist. LEXIS 63897, at *1, 10-11 (E.D. Mo. Aug. 29, 2007)) ("When the gravamen of the complaint involves an untrue statement or substantive omission of a material fact, and when that conduct coincides with a transaction involving a covered security, SLUSA mandates dismissal."); *cf. Chadbourne & Parke v. Troice*, 134 S. Ct. at 1071-72 (concluding that claims relating to the purchase (alone, with no exchange) of non-covered securities did not support the "in connection with" requirement and noting that the case did *not* involve the sale of covered securities to purchase non-covered securities which could have changed the result)[7]. Consequently, Plaintiffs cannot state a claim on the face of their complaint.

Thus, Plaintiffs' claims relating to the exchange of variable annuities for the PHL annuities are transactions completed "in connection with the purchase or sale of a covered security" and must be dismissed as a result. In light of the Court's findings with respect to SLUSA, it does not address the parties' other arguments on the sufficiency of Plaintiffs' Count I and II claims.[8]

---

[7] In *Chadbourne & Parke v. Troice*, the Supreme Court goes one step further, though not ruling on those grounds, by stating: "we agree with the Court of Appeals that unlike *Bankers Life* and *Zandford*, where the entirety of the fraud depended upon the tortfeasor convincing the victims of those fraudulent schemes to sell their covered securities in order for the fraud to be accomplished, the allegations here are not so tied with the sale of covered securities." 134 S. Ct. at 1071-72 (citation and quotation omitted).

[8] PHL mentions in passing that Plaintiffs' Counts III and IV claims are also based on allegations relating to covered securities. The Court disagrees and also notes that the consideration of those counts is not currently before the Court. Thus, the Court does not examine Counts III and IV.

## CONCLUSION

Based on the filings now before the Court, including the allegations in the Second Amended Complaint, which the Court accepts as true, Plaintiffs annuity exchange was made "in connection with" the sale of "covered securities" and therefore claims related to that exchange cannot survive a motion to dismiss.  However, because it is the Ruud's exchange, which involved a covered security (the Pacific Annuity), that forms the basis for the allegations in the complaint, the Court dismisses the claims without prejudice with leave to amend should other class members be able to state claims based on the exchange of non-covered securities or for other reasons.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendant PHL Variable Insurance Company's, d/b/a Phoenix, Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (Doc. No. [12]) is **GRANTED**.

2.      Defendants Anthony John Friendshuh and Heritage Partners, LLC's Motion to Dismiss Joining in Co-Defendant PHL Variable Insurance Company's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (Doc. No. [31]) is **GRANTED**.

3.      Counts I and II are **DISMISSED WITHOUT PREJUDICE** as to all Defendants.

Dated: February 27, 2015                s/Donovan W. Frank
                                                      DONOVAN W. FRANK
                                                      United States District Judge